IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:23-cv-00597-K-BT |
| JUDY WISOCKI, as Representative of the Estate of Howard Le Jeune, and SCARLETT ROBBINS, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Judy Wisocki's Renewed Motion to Stay (Doc. No. 127). Because Wisocki has failed to demonstrate that the Court should not exercise supplemental jurisdiction or that exceptional circumstances exist to abstain under the *Colorado River* doctrine, the Court **DENIES** her Renewed Motion to Stay.

### I.   Background

State Farm commenced this action on March 17, 2023, alleging that—after the death of its insured, Howard Le Jeune—it held death benefits based on two life insurance policies: Policy No. LF-1197-8322, which has a total payable benefit of $408,032.85; and Policy No. LF-1272-6541, which has a total payable benefit of $402,920.84 (collectively, "the Policies"). Compl. at 2–3, ¶¶ 3.1, 3.5 (Doc. No. 1).

Since State Farm issued the Policies in the early 1990s, the Policies' "ownership and beneficiary designations have changed several times"—most recently in 2009 when

1

Le Jeune transferred ownership of both Policies to Defendant Scarlett Robbins, who then designated herself as the primary beneficiary for both Policies. *Id.* at 2, ¶ 3.1. There has been an ongoing legal dispute over the Policies since 2016, when Le Jeune sued Robbins in the 13th District Court of Navarro County, Texas (Case No. D16-24649-CV) and sought a temporary restraining order to prevent Robbins from exercising control over the Policies. *Id.* at 3, ¶ 3.2. In October 2021, Robbins also brought a lawsuit against Le Jeune in the 13th District Court of Navarro County related to the 2016 lawsuit (Case No. D21-30086-CV). *Id.* ¶¶ 3.3, 3.4. Although the parties oftentimes, and confusingly, disagree on the status of the state court proceedings, the state court proceedings remain pending, and no trial date has been set. *See* Joint Report at 1–2, ¶¶ 1–4 (Doc. No. 118) (disagreeing on what claims, if any, remain pending in state court); Joint Report at 6–7, ¶¶ 17–21 (Doc. No. 126) (clarifying status of state court proceedings).

Among other things, Le Jeune's state court Petition alleges that Robbins defrauded him over several years by seducing him as a romantic partner and masquerading as a professional caregiver for his adult daughter who suffers from severe mental deficiencies. *See generally* Le Jeune Orig. Pet. (Doc. No. 47-1). Le Jeune alleges that "as a result of [Robbins's] fraud, manipulation, and undue influence," he made countless lavish gifts to her, built a house and a barn for her on her property, transferred hundreds of thousands of dollars to her from his bank accounts, gave her power of attorney over his financial accounts, and assigned the Policies to her. *Id.* at 3–5.

After Le Jeune died on November 2, 2022, State Farm received a letter from an attorney on behalf of the purported representative of Le Jeune's estate advising State Farm that the Policies were disputed and requesting State Farm not to pay any claims until the two state court lawsuits are resolved. Compl. at 4, ¶ 3.6 (Doc. No. 1). Thereafter, Robbins submitted a claim to both Policies' proceeds, and State Farm received another letter from the purported representative of Le Jeune's estate, again requesting that State Farm not pay any claims until the state court lawsuits were resolved. *Id.* ¶ 3.7. On February 6, 2023, State Farm sent a letter advising Robbins and the purported representative of Le Jeune's estate that if they could not agree on the distribution of the Policies' proceeds within 45 days, State Farm would file an interpleader action. *Id.* ¶ 3.8.

When Robbins and the purported representative of Le Jeune's estate failed to reach an agreement, State Farm filed this interpleader action. *Id.* ¶ 3.9. State Farm also moved to deposit the Policies' proceeds into the Court's registry. Mot. Interpleader Deposit (Doc. No. 25). The Court granted this request, *see* Order Granting Interpleader (Doc. No. 37), and State Farm deposited the disputed proceeds into the registry of the Court. Mot. Dismiss at 2 (Doc. No. 52); Renewed Mot. Dismiss at 5 (Doc. No. 79). The Court subsequently dismissed State Farm from this lawsuit and relieved it "from further liability for any claims that pertain directly to the Policies." Mem. Op. and Order at 12 (Doc. No. 116).

3

Robbins filed her First Amended Answer, which alleges crossclaims against Defendant Judy Wisocki as the purported representative of Le Jeune's estate for tortious interference. *See* Robbins's First Am. Answer, Counter-Claims, and Cross-Claims at 12–13, ¶¶ 83–90 (Doc. No. 49). Wisocki also asserted crossclaims against Robbins for breach of Le Jeune and Robbins's purported settlement agreement, breach of contract, breach of fiduciary duty, fraud, undue influence, theft, and promissory estoppel. *See* Wisocki Crossclaim at 9–12, ¶¶ 31–50 (Doc. No. 47). Robbins has moved for summary judgment on Wisocki's crossclaims, *see* Doc. No. 83, but Wisocki seeks to stay or abate this matter pending the outcome of the state court proceedings, *see* Doc. No. 127.

## II.   Legal Standards and Analysis

### A.  Supplemental Jurisdiction

Wisocki urges the Court to decline to exercise supplemental jurisdiction because Robbins and Wisocki's crossclaims "are exclusively state claims based on Texas law." Wisocki's Br. at 6–7 (Doc. No. 128). If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains statutory supplemental jurisdiction over any related state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639–40 (2009). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id.* at 639. However, the "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial—but that rule "is neither mandatory nor absolute." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted); *see also* 28 U.S.C. § 1367(c) (enumerating circumstances where a district court may refuse to exercise supplemental jurisdiction, including when it has dismissed all claims over which it had original jurisdiction). The Court's decision to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity[.]" *Batiste*, 179 F.3d at 227. "No single factor" in the supplemental jurisdiction analysis is dispositive. *Id.*

Upon consideration of the facts of this case, § 1367(c), and the relevant factors of judicial economy, convenience, fairness, and comity, the Court will exercise its discretion to continue to exercise supplemental jurisdiction over the state law claims in this matter. The Fifth Circuit has plainly stated: "It is settled, of course, that [supplemental] jurisdiction does extend to cross-claims properly asserted under Rule 13(g), including those filed between competing claimants in a Rule 22 interpleader." *Travelers Ins. Co. v. First Nat'l Bank of Shreveport*, 675 F.2d 633, 638 (5th Cir. 1982).

The crossclaims asserted in this case relate to the subject matter of this interpleader action—who is entitled to the Policies' proceeds—and thus meet Rule 13(g)'s requirements. *See* FED. R. CIV. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action."); *Reed Migraine Ctrs. of Tex., PLLC v. Chapman*, 2016 WL 11788094, at *2 (N.D. Tex. June 15, 2016) (Godbey, J.) (finding that the requirements of Rule 13(g) were met because the asserted crossclaims were "close enough to the original subject matter of the interpleader action – i.e., determining who is entitled to the settlement funds," but declining to exercise supplemental jurisdiction because the parties settled the claims in the underlying case); *Accordia Life and Annuity Co. v. Shyvers*, 2018 WL 1453277, at *6 (S. D. Tex. Mar. 23, 2018) ("Because the crossclaims are part of the same transaction or occurrence as [the parties'] claims to the interpled fund, the court finds that it may exercise supplemental jurisdiction over the crossclaims."). Accordingly, the Court will exercise supplemental jurisdiction over Robbins's and Wisocki's crossclaims in this matter.

### B. *Colorado River* Abstention

The *Colorado River* abstention doctrine draws its name from a United States Supreme Court case, *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). That case created a framework by which federal courts decide whether to

stay or dismiss federal proceedings for coercive relief when parallel state court proceedings exist. *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000); *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002). But as a general rule, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction" because "federal courts have a virtually unflagging obligation to exercise the jurisdiction given [to] them." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (cleaned up).

Courts apply a two-step test when determining whether to abstain under *Colorado River*. First, the state court proceeding must be "parallel" to the federal lawsuit. *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797–98 (5th Cir. 2014). If the two suits are parallel, the court then applies a six-factor balancing test. *Id.* at 798. However, "[a] *Colorado River* abstention analysis begins with a heavy thumb on the scale in favor of exercising federal jurisdiction, and that presumption is overcome only by 'exceptional circumstances.'" *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018).

### 1. Parallel Proceedings

The threshold inquiry in the *Colorado River* analysis is to determine if the state court lawsuit and the federal court lawsuit are parallel proceedings. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006) (citing *Republic Bank Dall., Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987)); *Am. Fam. Life Assurance Co. of*

*Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013) (cleaned up). "Suits are 'parallel' if they 'involve the same parties and the same issues.'" *Brown*, 462 F.3d at 395 n.7 (citing *Republic Bank Dall., Nat'l Ass'n*, 828 F.2d at 1121).

In this case, the state court and federal court lawsuits involve the same parties and the same issue—whether Robbins or Wisocki is entitled to Policies' proceeds. The parties do not dispute that the state court and federal court lawsuits are parallel proceedings. *See* Wisocki's Br. at 8 (Doc. No. 128) ("The instant case involves the exact same parties and the exact same issues[.]"). Therefore, the Court finds that this lawsuit and the state court lawsuits are parallel proceedings for the purposes of a *Colorado River* analysis.

### 2. Exceptional Circumstances

Once a federal court has decided that a state court lawsuit and the federal court lawsuit are parallel proceedings, the federal court must decide if exceptional circumstances justifying abstention are present. *Afr. Methodist Episcopal Church*, 756 F.3d at 798. Courts consider six factors when evaluating whether or not "exceptional circumstances" exist: (1) assumption by either the state or federal court over a res; (2) relative inconvenience of the forums; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent forums; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Aptim*, 888 F.3d at 135–36. The decision of whether to abstain does not rest on a mechanical checklist,

but on a careful balancing of the factors, with the scale heavily weighted towards exercising jurisdiction. *Id.* at 135.

a. Res at Issue

The first factor weighs towards exercising jurisdiction. The first *Colorado River* factor "considers whether the two actions involve disputes over the same property, or res." *Brook-Hollow Cap., LLC v. Garcia Law Grp., PLLC*, 2026 WL 482886, at *5 (S.D. Tex. Feb. 20, 2026). If the parallel proceedings concern the same res, "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Id.* (quoting *Colorado River*, 424 U.S. at 818).

This Court assumed jurisdiction over the res in this case by depositing the Policies' proceeds into this Court's registry. Consequently, this factor provides no basis for abstention. *See W. Side Transp., Inc. v. Apac Miss., Inc.*, 237 F. Supp. 2d 707, 716 (S.D. Miss. 2002) (finding that the first *Colorado River* factor weighed against abstention because the policy proceeds at issue were deposited into the court's registry); *Am. Equity Ins. Co. v. Underwriters at Lloyds London and Certain Ins. Cos.*, 211 F.R.D. 298, 301 (S.D. Tex. 2022) (same).

b. Inconvenience Between Forums

Next, neither forum is any more or less convenient to the parties because the federal and state courts are in approximately the same geographic region. When considering this factor, courts ask "'whether the inconvenience of the federal forum is so great' that abstention is warranted." *Kelly Inv, Inc.*, 315 F.3d at 498 (quoting *Evanston*

9

*Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 2002)). "[T]his factor primarily involves the physical proximity of each forum to the evidence and witnesses." *Afr. Methodist Episcopal Church*, 756 F.3d at 800 (cleaned up). "When courts are in the same geographic location, the inconvenience factor weighs against abstention." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006).

Here, the 13th Judicial District Court of Navarro County located in Corsicana, Texas, sits approximately 55 miles, or about an hour drive, from the federal courthouse in Dallas, Texas. *See Aptim*, 888 F.3d at 136–37 (finding that 80-mile distance between state and federal courthouses did not demonstrate that the inconvenience of the federal forum was "so great" as to warrant abstention). Wisocki admits that she resides in Dallas County, but she does not discuss the proximity of the forums to the evidence and remaining witnesses. Wisocki's Br. at 9 (Doc. No. 128). Robbins claims that this Court "is more convenient for the parties and their counsel, as Defendant Judy Wisocki, her husband Jeff Wisocki, [and] witness James Balen (the attorney who wrote letters to State Farm) all live or work in Dallas County[.]" Robbins's Resp. Br. at 4, ¶ 14(B) (Doc. No. 132). Notably, Robbins—the only party who does not live in Dallas—does not argue that the federal court is an inconvenient forum. Given the relatively close locations of the courthouses and the proximity of the witnesses to Dallas, "this factor is neutral at best." *Aptim*, 888 F.3d at 136.

c.  Avoidance of Piecemeal Litigation

The Fifth Circuit has made clear the "piecemeal litigation" factor could more accurately be described as the "danger of inconsistent rulings" factor. *Black Sea Inv.*, 204 F.3d at 650–51. "Duplicative litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction." *Id.* at 650 (emphasis omitted).

Wisocki argues that there is "significant danger of inconsistent rulings" because "the proceeds of the Policies are central to the resolution of both the federal and state court actions." Wisocki's Br. at 9 (Doc. No. 128). In support of her position, she avers: "If the federal action should continue unabated, the district court and the state court would each determine the same issues with respect to the same property. The risk of inconsistent rulings would therefore be very real." *Id.* (quoting *Afr. Methodist Episcopal Church*, 756 F.3d at 800).

However, in *African Methodist Episcopal Church*, it was the state court—not the federal court—that asserted jurisdiction over the res at issue. *See Afr. Methodist Episcopal Church*, 756 F.3d at 799–800. In this case, this Court has exercised jurisdiction over the res by depositing the Policies' proceeds in the Court's registry. *Cf. Black Sea Inv.*, 204 F.3d at 651 ("When . . . no court has assumed jurisdiction over a disputed res, there is no such danger [of inconsistent rulings with respect to a piece of property]."). Should the state court render judgment before this Court, or vice versa, "a plea of *res judicata* after the completion of one suit could eliminate the problem of inconsistent

11

judgments." *Stewart*, 438 F.3d at 492; *see also Ferrari v. Francis*, 2024 WL 4773341, at *4 (N.D. Tex. Oct. 24, 2024) (Horan, J.) ("The remedy for conflicting judgments is not abstention, but the application of *res judicata*."), *adopted by* 2024 WL 4773304 (N.D. Tex. Nov. 12, 2024) (Scholer, J.). Therefore, this factor weighs towards exercising jurisdiction.

    d.  <u>The Order in Which Jurisdiction Was Obtained</u>

Under the fourth factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Black Sea Inc., Ltd.*, 204 F.3d at 651 (cleaned up). And the Fifth Circuit has "suggested that this factor only favors abstention when the federal case has not proceeded past the filing of the complaint." *Stewart*, 438 F.3d at 492–93.

It is undisputed that the state court proceedings have been pending for several years and have proceeded past the summary judgment phase. Joint Report at 6, ¶ 20 (Doc. No. 126). Wisocki states that she and Robbins have "entered into a mediated settlement agreement, disputed the validity of that agreement including an appeal to the Waco Court of Appeals, and engaged in written and deposition discovery." Wisocki's Br. at 9–10 (Doc. No. 128). In contrast, Wisocki claims that the "substantive merits of the dispute between Wisocki and Robbins [in federal court] . . . [have] effectively not proceeded past the filing of the complaint." *Id.* at 10.

Despite Wisocki's characterization, the federal case has clearly progressed past the filing of the complaint. This federal lawsuit has been pending for over three years

and has also progressed to the summary judgment stage. *See Stewart*, 438 F.3d at 492 (finding that this factor weighed against abstention because the "federal lawsuit progressed through an entire case management order, had a summary judgment motion pending at the time of the stay, and a trial date"); *Nationwide Prop. & Cas. Ins. Co. v. Buckley*, 642 F. Supp. 3d 544, 551–52 (S.D. Miss. 2022) (finding that this factor weighed against abstention despite fact that state court litigation neared maturity and trial). There are over 130 docket entries in this case, and the parties have participated in significant briefing and motion practice. Although the Court previously set this case for trial on two occasions, *see* Doc. Nos. 7 and 51, neither the state court action nor this action is set for trial, *see* Wisocki's Br. at 3 (Doc. No. 128) ("The State Action is not currently set for trial and remains pending."). For these reasons, this factor weighs towards exercising jurisdiction.

e.  The Extent Federal Law Governs the Case

The parties do not dispute that crossclaims asserted in this action involve only issues of state law. "Nevertheless, '[t]he absence of a federal-law issue does not counsel in favor of abstention.'" *Black Sea*, 204 F.3d at 651 (quoting *Evanston Ins. Co.*, 844 F.2d at 1193). The Fifth Circuit explains:

> Our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional circumstances," the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of that jurisdiction. Thus, "the presence of state law issues weighs in favor of surrender only in rare circumstances."

13

*Id.* (cleaned up). This factor does not present an "exceptional circumstance" warranting abstention. Rather, "the present dispute is governed by well established Texas law with no new or novel issues of first impression, [and] therefore, is at most a neutral factor." *Chaucer Corp. Cap., No. 2 Ltd. v. Village Contractors, Inc.*, 2010 WL 3702609, at *7 (S.D. Tex. Sept. 15, 2010) (citing *Black Sea*, 204 F.3d at 651); *see also Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 817 (5th Cir. 2016) (determining that this factor was "at most neutral" because the case presented "a simple diversity action involving routine matters of state law"). Accordingly, this factor remains neutral.

    f.   Adequacy of State Court Proceedings

The final *Colorado River* factor assesses whether the state court proceedings are so inadequate that it would be "a serious abuse of discretion" to abstain. *Moses H. Cone*, 460 U.S. at 28. This factor, though, "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston Ins. Co.*, 844 F.2d at 1193.

Wisocki provides no basis to find that the state court proceedings are inadequate. Wisocki's Br. at 11 (Doc. No. 128) ("Here, there is no indication Robbins would suffer from inadequate protections of her interests in the State Action."). In response, Robbins contends that the state court proceedings are "clearly inadequate, because the state court cannot decide the central issue – who gets the proceeds." Robbins' Resp. Br. at 6, ¶ 14(F) (Doc. No. 132).

There is no indication in the instant case that Wisocki or Robbins's interests would not be adequately protected in state court. *See Aptim*, 888 F.3d at 139 ("Nothing

has impugned the state court's ability fairly to determine the legal questions at issue, so this factor is neutral."). Therefore, this factor is neutral. *See id.*; *Black Sea*, 204 F.3d at 651 ("It is clear, however, that this factor 'can only be a neutral factor or one that weighs against, not for, abstention.'") (citing *Evanston Ins. Co.*, 844 F.2d at 1193).

### g. Balancing the Factors

In sum, three *Colorado River* factors weigh towards exercising jurisdiction, and three factors are neutral. No factors weigh in favor of abstention. Considering the heavy weight this Court must give to resolving questions under *Colorado River* in favor of exercising federal jurisdiction, the Court exercises its discretion to continue hearing all issues in this case and denies Wisocki's Motion to Stay.

## III. Conclusion

Because Wisocki has failed to demonstrate that the Court should not exercise supplemental jurisdiction or that exceptional circumstances exist to abstain under the *Colorado River* doctrine, the Court **denies** her Renewed Motion to Stay (Doc. No. 127).

**SO ORDERED.**

Signed June 30th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICTJUDGE

15